R. S. MARPLE, *as Executor, etc.*, v. W. F. MARPLE *et al.*
**No. 12,410.**   ( 65 Pac. 645.)

### SYLLABUS BY THE COURT.

TITLE AND OWNERSHIP—*Tax Title*—*Priority of Mortgages.*
Where one holding a voidable tax deed executes a quitclaim to
the owner of the premises and takes a note secured by a mortgage
thereon in payment of the sum agreed on for such quitclaim deed,
the holder of the tax deed thereby waives his tax lien, and his
mortgage is inferior to another mortgage previously given.

Error from Woodson district court; L. STILLWELL,
judge.   Opinion filed July 6, 1901.   Division two.
Reversed.

*Lamb & Hogueland*, for plaintiff in error.
*Clesson S. Kinney*, for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: Two of the defendants in this
action, being the owners of a tract of land, mortgaged
it to plaintiff's testator to secure a debt due from them
to him.   Afterward they suffered the land to go to
tax sale and deed.   This deed, though good on its
face, was voidable because of irregularities in the pro-
ceedings upon which it was based.   It was placed on
record, but the owners of the land always remained
in possession.   Before it had been on record five
years the owners of the land obtained from the tax-
deed holder a quitclaim deed, paying him $300 in
cash and giving him a note for $500 secured by a
mortgage on the land.   This action was brought more
than five years after the recording of the tax deed, to
foreclose the first mortgage.   The holder of this $500

Marple v. Marple.

mortgage was made a party, and this contention arises upon a question of priority between these two mortgages.

We think the court below erred in holding that the lien of the last mortgage was the superior one.   At the time the owners of the land purchased the interest of the tax-deed holder and received a quitclaim from him, the tax deed had not ripened into a title; it had not become efficient to cut off the prior title; no new title had arisen.   A tax deed had issued, but it was voidable; it might never rise to the dignity and potency of a *title*.   To accomplish this, possession must have been obtained under it, and it must have been on record for five years.   At this juncture the owner of the original title bestirred himself, and sought to avert the threatened danger.   To do this he needed $800.   He had $300 and must have $500 more, or get the owner of the threatening title to give him credit for that sum.

It is claimed in the brief of plaintiff in error that the $300 cash paid was more than sufficient to pay all the tax liens then existing, but there is nothing in the record supporting such claim.   However, we do not think it material.   The transaction between the holder of the tax deed and the owner of the land amounted in law simply to the extinguishment of the tax lien arising upon the cancelation of the voidable tax deed.   And whether that lien amounted to but $300, the cash paid, or the entire $800, makes no difference.

The holder of the tax title was content to surrender his prior lien, to which he was entitled under the the statute for the taxes paid, and accept in lieu thereof another and different kind of lien, to wit, a mortgage.   In doing so, he waived his first lien and took a subordinate one.   It was as though the owner

of the land had borrowed this amount of money from any other person, and given a like mortgage to secure it.

It is suggested that, as this action was not brought until the expiration of more than five years after the recording of this tax deed, the latter, as an instrument of title, had become efficient, and that, therefore, the second mortgage had become superior. Not so. The tax deed became innoxious, and its adversary character was extinguished and merged when its holder conveyed by quitclaim deed his interest therein to the owner of the original and threatened title, and that was, as we have seen, before the new title had matured. And besides this, no possession had even been taken under the tax deed; for surely it will not be claimed that the possession of the owner of the original title was changed to a possession under this incipient title upon the receipt of the quitclaim deed? Such a claim would merge the greater into the less and not the less into the greater.

The judgment of the court below will be reversed, with the direction to proceed in accordance with this opinion.

SMITH, ELLIS, JJ., concurring.